UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
GARO ALIKSANYAN,
Plaintiff,

AMENDED COMPLAINT

(JURY TRIAL REQUESTED)

**Index No. 17 CV 394**
**(Brodie,J.) (Gold, M.J.)**

- against -

VERIZON,
NY STATE PUBLIC SERVICE COMMISSION,
FEDERAL COMMUNICATIONS COMMISSION,
Defendants.
--------------------------------------X




Plaintiff, in his pro se capacity, alleges as follows:

**SUMMARY**

Plaintiff Garo Aliksanyan (ALIKSANYAN), a long time Lifeline Program landline telephone customer of Verizon has been denied re-certification five times within the past seven (7) month period with feigned reasons, as proven by the voluminous documentary evidence meticulously saved by plaintiff. Plaintiff speaks for the tens of thousands, perhaps hundreds of thousands of similarly situated qualified Lifeline New York State applicants who do not have the education, tenacity, language, nor the physical capability to seek redress from the courts, and as such, asks this court for class action status. Plaintiff pleads to this court that the egregiousness and pattern of such self-evident intentional and numerous and repeated false purported reasons for denials is an effort by Verizon to obfuscate and frustrate qualified Lifeline applicants to "force" them to pay full price for both telephone and internet service instead of the very low price of the Lifeline Program. Verizon has reaped in millions of dollars by creating a "windfall" from its monopoly of being the only provider of Lifeline services in New York City and some parts of New York State. Verizon should have to reimburse those applicants who were falsely denied Lifeline service all the monies they were forced to pay Verizon in this game of telephone

RECD: 3/9/2017 @ 8:22AM. RV

and broadband service "extortion" of monies from qualified Verizon Lifeline customers, which Verizon has engaged in since 2015. Verizon's egregious behavior is deserving of the severest special damages and punitive awards.

Defendants New York State Public Service Commission ("PSC) and Federal Communications Commission ("FCC"), the state and federal regulating authorities of Verizon, respectively, by virtue of their unique governmental powers, conspired to permit Verizon to get away this windfall profit despite having documented a pattern of complaints regarding Verizon's wholesale denials of Lifeline qualified applicants as those similarly situated as plaintiff. PSC and the FCC failed to perform their ministerial duties to protect eligible applicants' rights upon repeated appeals to them. Consequently, the FCC and the PSC should bear some of the burden on reimbursing qualified Lifeline applicants who were illegally denied Lifeline service, as well as special damages and punitive awards.

## INTRODUCTION

1. This is an action for violations of constitutional and civil rights under the First, Fifth and 14th Amendments of the United States Constitution, denial of state due process under New York State Constitution Article 6, denial of state equal protection clause of the New York State Constitution Article 1 §1 & §6, denial of federal Equal Protection under the 14th Amendment of the US Constitution, and Public Service Law § 229(3)for federal and state torts, and violations under 42 USC 1983 and 1985, for denial of federal due process, civil conspiracy, breach of contract as third party beneficiaries to government contracts, rules, promulgations and/or agreements, intentional and negligent infliction of emotional stress and mental disturbance, tortuous interference with contractual relations, negligence, failure to properly supervise, discipline or train employees, federal and common law unfair competition and unjust enrichment, fraudulent and negligent misrepresentation, common law unfair misappropriation, violations of the Donnelly Act, and the Sherman Anti Trust Act.

2. Plaintiff seeks a Declaratory Judgment pursuant to Section 3001 of the CPLR of the State of New York, and under the federal Declaratory Judgment Act, 28 USC § 2201 and, a Mandamus Proceeding under Article 78 of the Civil Practice Law Rules ("CPLR") to compel the performance of ministerial duties imposed by laws and rights and to overturn decision(s) made by defendants, and in addition, monetary damages, including special and punitive damages.

3. This action arises out of plaintiff's applications, totaling seven (5) attempts within the past seven (7) months, and Verizon's long-time and repeated refusals to comply with essential aspects of the governmental rules and regulations/contracts/agreements/franchises requiring Verizon to provide plaintiff and others similarly situated as plaintiff with Lifeline communications service. Also, Verizon's 42 USC 1983 violation of plaintiff's due process rights because Verizon must be considered to be a state actor because it has been awarded an exclusive franchise by New York City to provide landline telephone service and consequently is the <u>only</u> entity in NY City through which the FCC's Rule to provide the Lifeline service is obtained.

4. The PSC and FCC are state actors, and by virtue of their failure to perform ministerial duties of providing the mandated governmental oversight to plaintiff's complaints of the denial of his rights to Lifeline service, conspired to "look the other way" and ignore complaints regarding Verizon's custom and policy of denying qualified Lifeline applicants this service. Consequently the FCC and PSC violated the due process rights of plaintiff under 42 USC 1983 and conspired to violate the due process rights of plaintiff under 42 USC 1985, and all those similarly situated as plaintiff.

5. Plaintiff seeks Class Action status on behalf of all those similarly situated in New York State who have sent in their Lifeline applications to Verizon since January 1, 2015 and have been denied the service with false purported reasons of denial. Or, in the alternative, plaintiff seeks a class action status of a "class of one" if class action status is denied.

## JURISDICTION

6. Jurisdiction of this court is invoked pursuant to and under USC Section 1331(3) and (4), 1332, and 1343 in conjunction with the Civil Rights Act of 1871, 42 USC 1983, 1985, the First, Fourth, Fifth Amendments and the equal protection clause of the Fifth and Fourteenth Amendments to the United Constitution, and because defendant FCC moved this case, originally filed by plaintiff in Civil Court of Queens County, into federal court.

## VENUE

7. Venue is proper in this court pursuant to CPLR 504(3) and 28 USC 1391(C) because plaintiff lives in Queens.

8. Plaintiff seeks to invoke concurrent jurisdiction over both the federal and state claims and causes of action due to having the exact same common nucleus of operative facts.

9. Defendant PSC in its Answer in the preceded Queens County Civil case, argued that it could only be sued in the Court of Claims due to being a state agent. Plaintiff has filed a Notice of Intent to File Claim with the NY State Attorney General's office on January 23, 2017. As such, it would be in the interest of judicial economy and prevent confusion to keep this matter in federal court since all the claims and defendants are based upon the exact same set of operative facts.

## THE PARTIES

10. Plaintiff Garo Aliksanyan (ALIKSANYAN) resides at 157-06 65th Ave, Flushing, NY 11367 and is and has been a resident of New York City and State for thirty seven (37) years. Plaintiff has had Lifeline service for approximately ten years and is qualified to receive Lifeline and is entitled to have his rights to have such services under the Telecommunications ct of 1996, which is mandated to be provided by the PSC and is enforced by the PSC. Plaintiff had been the primary and sole caretaker of his 92 year old deaf, blind, and bedbound mother. For one year now Plaintiff has had to hire a live-in aide for his mother because of his inability to provide the

constant care and oversight his mother needs due to a lack of reliable telephone service. Cel phone service is sporadic, plaintiff cannot see the digits of a cel phone, and his mother's is too deaf to understand most conversations over the low quality of cel phone calls. Plaintiff has also been unable to fax medical records and prescriptions to doctors and pharmacies, has been unable to find doctors and online medicines due to lack of internet, and the lack of landline phone service caused his mother to have to be ambulanced to a hospital recently due to not getting her glucose read when she was having a serious drop in blood sugar because plaintiff has been unable to call her numerous times a day for a year.

11. Defendant Verizon ("VERIZON") has its corporate headquarters at 140 West St. New York, NY 10007 and provides landline telephone communications, internet, and television to residents of New York City, including Lifeline service. Verizon is the <u>only</u> landline communications provider of Lifeline service in New York City. Verizon accepts applications for such service and makes the determinations upon the applications. Therefore, Verizon has a monopoly on landline Lifeline services in New York City. Because Lifeline service is mandated by the federal government, Verizon must be considered a state actor acting under the color of law.

12. Defendant New York State Public Service Commission ("PSC") is headquartered at 3 Empire State Plaza, Albany, NY 12223-1350 and is the public utilities commission of the New York State government that regulates and oversees the electric, gas, water, and telecommunication industries in New York as part of the Department of Public Service. The department's regulations are compiled in title 16 of the New York Codes, Rules and Regulations. The PSC is the New York State governmental authority empowered and obligated by state law to protect the rights of New York State residents to receive communication and broadband services, including Lifeline service. Consequently, the PSC is the <u>sole</u> authority within NY State to protect qualifying residents' rights to be awarded Lifeline service by Verizon, and has a duty to plaintiff and those

similarly situated to oversee Verizon's actions and lack of actions and ensure that Lifeline service is awarded to qualified applicants.

13. Defendant Federal Communications Commission ("FCC") is headquartered at 445 12th St SW, Washington, DC 20554 and is an independent agency of the United States government, created by Congressional statute (see 47 U.S.C. § 151 and 47 U.S.C. § 154) to regulate interstate communications by radio, television, wire, satellite, and cable in all 50 states, the District of Columbia and U.S. territories, and has mandated the providing of Lifeline services to qualifying New York State residents. The 1996 Telecommunications Act required the FCC to promulgate the Lifeline service Program by Verizon and other telephone companies to qualifying applicants. Consequently, the FCC is the sole federal authority to protect qualifying residents' rights to be awarded Lifeline service by Verizon and is obligated by the 1996 Telecommunications Act to ensure that qualified applicants for Lifeline receive the service.

**THE FACTS**

14. On March 31, 2016, the FCC adopted a comprehensive reform and modernization of the Lifeline program. In the 2016 Lifeline Modernization Order, the Commission included broadband as a support service in the Lifeline program. The Commission also set out minimum service standards for Lifeline-supported services to ensure maximum value for the universal service dollar, and established a National Eligibility Verifier to make independent subscriber eligibility determinations. Both a landline telephone number and broadband internet services are offered to qualifying residents for only $9.25 per month.

15. Prior to March 31, 2016 the monthly fee for Lifeline landline telephone, without the 2106 added broadband, was just $1, plus taxes, totaling $5.68.

16. Plaintiff has been paying the $5.68 monthly bill with Lifeline, for approximately ten years.

17. Verizon's Lifeline program requires occasional, unpredictable, arbitrary and capricious re-certification, which has been purposely used by Verizon to deny eligible Lifeline applicants this low cost service.

18. After many years of having Lifeline service, in January of 2015 plaintiff was asked by Verizon to re-certify his Lifeline service. Plaintiff sent his re-certification documents to Verizon but never received a response. Suddenly, plaintiff's next month's Verizon bill increased from a total of $5.68 per month to $39.51.

19. Plaintiff made numerous calls to Verizon and ended up getting no answers as to why he had not received a reply to his re-certification application and why his Verizon bill was suddenly at a non-Lifeline cost. On January 20, 2015 plaintiff resorted to appealing to the PSC by filing a complaint. PSC never responded.

20. On January 21, 2015 Plaintiff re-sent another application for Lifeline to Verizon, again including his income eligibility proof of <u>both</u> his tax forms <u>and</u> his Home Energy Assistance Program award letter, despite the fact that he only needed to provide <u>one</u> or the other for income verification.

21. On February 2, 2015 Plaintiff re-sent a third application for Lifeline, including his income eligibility proof of <u>both</u> his tax forms <u>and</u> his Home Energy Assistance Program award letter, despite the fact that he only needed to provide <u>one</u> or the other for income verification. Plaintiff received acknowledgment of receipt of his two newest applications with letters dated February 11, 2015, and February 13, 2015.

22. Three days after the February 13, 2015 acknowledgment letter Verizon sent a letter to plaintiff dated February 16, 2015 denying his application, claiming that the *"beneficiary Section of the application was incomplete." "name and/or address are missing on the proof provided." "telephone number on the application is missing or incorrect"* All three allegations from Verizon were 100% contrary to the facts and were intentional false allegations.

23. On March 2, 2015 plaintiff re-sent his application a fourth time.

24. Plaintiff received two letters dated March 6, 2015 from Verizon acknowledging his fourth submission in the previous three months.

25. Finally, in July 2015, without receiving a letter of approval of his re-certification, Plaintiff's Verizon bill was reduced to Lifeline rate.

26. Plaintiff's telephone bill was credited for the several months of the overbilling which Verizon had engaged in.

27. One year later, in June 2016. Plaintiff asked Verizon to change his telephone number due to receiving excessive junk calls after having the same phone number for twenty years.

28. A new phone number of 718 788 9147 was assigned and by letter dated June 27, 2016 Verizon "welcomed" plaintiff as a "new customer."

29. The next month's Verizon bill, dated July 16, 2016, plaintiff was once more billed at regular rates instead of the Lifeline rates.

30. After numerous calls to Verizon, plaintiff was informed that the Lifeline award, by custom and policy, was assigned to phone numbers and not to the name of qualifying person receiving the service, and that as a result of changing his phone number, plaintiff had lost his Lifeline service.

31. By letter dated June 27, 2016 Verizon asked plaintiff to re-apply for Lifeline.

32. On August 2, 2016 plaintiff sent a new application within along with his income eligibility proof of his federal income tax return.

33. As had occurred just 12 months prior in 2015, again, plaintiff never received a response from Verizon. After numerous calls to Verizon. plaintiff was verbally informed by a Verizon supervisor that he had been denied eligibility because plaintiff had first checked off and then crossed out "Home Energy Assistance Program" ("HEAP") as his proof of income eligibility, and then had checked the box for "eligibility based on income" and had enclosed his IRS tax returns as required for "eligibility based on income." Despite having sent the proper documents

Verizon was claiming the checking the correct box after checking and crossing out the wrong box was reason to deny Lifeline service.

34. In September 2016 Plaintiff filed a complaint with the FCC and all he received was two pages of the FCC's website page regarding Lifeline. No other communication was received and no action was taken by the FCC against Verizon.

35. Plaintiff's phone bill went unpaid because at regular prices plaintiff, a retiree on low income, could not afford it, and Verizon disconnected his new phone number as a result.

36. After many more calls to Verizon and a computer chat with Verizon customer service plaintiff re-submitted his application to Verizon three more times, twice via certified mail and once by fax, dated January 23, 2017, January 30, 2017 and January 27, 2017, respectively.

37. In Plaintiff's chat with Verizon, plaintiff pleaded that plaintiff has a 92 year old deaf, blind, bedbound mother who needs a landline phone so plaintiff can call her numerous times a day to check on her as she is prone to fall, has diabetes and her blood pressure can drop suddenly causing her to faint and fall, and that she has been cutoff from receiving calls from plaintiff due to plaintiff's lack of access to reliable phone service, and the low volume and distorted quality of cel phone calls preventing his mother from understanding due to being significantly deaf.

38. Plaintiff filed a new complaint with the PSC for the 2016 episode of his Lifeline being taken away and was assigned Complaint # 625083.

39. After not receiving any correspondence from PSC plaintiff called the PSC numerous times and spoke with Bill, Maribel Rivera, and Diane, the latter on Sept 8, 2016, and the former in August of 2016. No action nor acknowledgment ever came from the PSC.

40. On September 20, 2016 plaintiff filed the instant action against the three defendants.

41. By letter dated February 6, 2017 Verizon denied plaintiff's latest three applications again falsely claiming that *"Billing name printed on the application does not match the billing name on our*

*records,"* that *"proof of participation in a qualifying program was missing,"* and *"we are unable to verify your eligibility in the government's benefits database."* .

42. On February 15, 2017 Plaintiff sent yet another application to Verizon, again with proof of eligibility. By letter dated Feb 13, 2017, two days prior to the Feb 15 date of submission of the latest application, Verizon again denied plaintiff the Lifeline service claiming that plaintiff must first have an active Verizon landline phone number, ignoring the fact that it was Verizon who turned off plaintiffs active phone number.

43. By letter dated February 24, 2017 Verizon again denied plaintiff's February 15, 2017 application, again citing as a reason that plaintiff's phone number was by now long disconnected. Curiously, this last rejection letter made no mention of the previous other rejection reasons of *"Billing name printed on the application does not match the billing name on our records,"* and *"proof of participation in a qualifying program was missing,"* and *"we are unable to verify your eligibility in the government's benefits database."* This is, in effect, an admission then that the previous rejections were based on false reasons, and also that had the previous false rejection reasons not been utilized to deny Lifeline, plaintiff should have been awarded Lifeline because at the time plaintiff's new phone number had not yet been disconnected. Verizon had given false reasons of rejection, and then disconnected the new phone number, and then used the disconnection as a new reason to deny Lifeline to plaintiff.

44. This chronology of Verizon's responses show that an actual intentional strategy has been in place at Verizon to deny qualified Lifeline customers this service, as well as throw off long time Lifeline customers off of Lifeline so they are forced to pay full price.

45. In total, five applications have been submitted within the past seven months, all properly completed and necessary proofs attached, and all five have been either not replied to or have been rejected with false and feigned reasons for the denial.

## CLAIMS

46. Under the Telecommunications Act of 1996 Plaintiff is the third-party beneficiary of the FCC's Rules and Regulations mandating Verizon to provide Lifeline services to qualified NY State residents. The PSC's is mandated by state law to review complaints and regulate Verizon's services and take appropriate actions against Verizon when Verizon fails to meet its statutory obligations.

47. The PSC, acting under the color of law as a state actor, has a ministerial duty to protect the rights of plaintiff under the United States Constitution's Due process Clause, and has repeatedly not done so and has shown a custom, pattern and policy of not protecting the rights of those similarly situated as plaintiff. Agency level liability is established when a custom/policy to treat a certain case a certain way is enacted by the state actor, in violation of 42 USCS 1983.

48. The FCC has a ministerial duty to protect the rights of plaintiff under the United States Constitution's Equal Protection Clause, and repeatedly has not done so and has shown a custom, pattern and policy of not protecting the rights of those similarly situated as plaintiff. Agency level liability is established when a custom/policy to treat a certain case a certain way is enacted by the state actor, in violation of 42 USCS 1983.

49. Verizon's obvious purposeful effort to minimize Lifeline customers by making false claims of rejection and the FCC and PSC having abdicated their ministerial duties to protect plaintiff's rights has harmed plaintiff in numerous ways such as loss of use of telephone and internet service, loss of enjoyment, loss of productivity, emotional distress, and monetary expenses to hire a live in maid for his mother.

50. As a proximate cause of Verizon's and PSC's and FCC's actions and lack of actions plaintiff had to cease being his mother's primary caretaker and has had to spend thousands of dollars he could not afford to hire a 24 hr/ day a week live-in aid with his mother for a year or longer.

51. As a proximate cause of Verizon's and PSC's and FCC's actions and lack of actions plaintiff has been damaged by having no manner of sending nor receiving faxes, which are needed for low cost online prescription orders, medical records for both himself and his 91 yr old blind and deaf, bedbound mother.

52. Plaintiff has been damaged by not being able to make nor receive many phone calls for almost one year, as the digits on cel phone digits are too small for plaintiff to read.

53. Plaintiff has had to live with sporadic internet with his cel phone acting as a modem, and this has lost him capabilities he would otherwise have had with the broadband internet part of Lifeline service. Plaintiff has not been able to find doctors, order online medications, fax prescriptions, send and receive records.

54. Plaintiff has been denied his rights under federal law, the New York State and Federal Constitutions in a most egregious manner.

55. Defendants have shown a pattern of deceit and conspiracy to deny qualifying applicants Lifeline services, and a collusion to obfuscate qualified Lifeline applicants from obtaining the service.

**RELIEF SOUGHT**

WHEREFORE, plaintiff seeks:

A. class action status to include all New Your State residents who are customers of Verizon who are qualified for and have been denied Lifeline services since January 1, 2015, or in the alternative a "class of one" status.

B. declaratory judgment that Verizon's actions and lack of actions have violated the rights of qualifying Lifeline applicants.

C. declaratory judgment that the PSC's and FCC's actions and lack of actions have violated their ministerial duties to protect the rights of qualifying Lifeline applicants who have complained to them when they have been falsely denied Lifeline service by Verizon with fraudulent denials.

D. monetary judgment and damages on behalf of all qualified but rejected New York State Lifeline applicants of Verizon, including plaintiff, since January 1, 2015, divided among the three defendants as seems just and appropriate to this court.

E. Special and punitive damages against Verizon, the FCC, and PSC.

Date: March 2, 2017

Respectfully submitted:

GARO ALIKSANYAN
157-06 65th Ave
Flushing, New York 11367

To:

Montfort, Healy, McGuire & Salley
c/o Christopher Cafaro
on behalf of Verizon
840 Franklin Ave
Garden City, NY 11530

NY State Public Service Commission
c/o Salomon T. Menyeng, Assistant Counsel
3 Empire State Plaza
Albany, NY 12223-1350

US Attorney Eastern District of New York
on behalf of
Federal Communications Commission
Edwin R. Cortes, Esq.
271 Cadman Plaza East
Brooklyn, NY 11201

VERIFICATION

State of New York }
}ss.:
County of Queens }

I, GARO ALIKSANYAN, being duly sworn, depose and say:

That I am the plaintiff in the above entitled action; that I have read the foregoing Amended Complaint and know the content thereof; and as to those matters which concern me, that under the penalty of perjury, the same is true to my knowledge except as to matters therein stated to be alleged upon information and belief, and that as to those matters I believe them to be true.

GARO ALIKSANYAN

Sworn to before me on the 2 th day of March, 2017

NOTARY PUBLIC

LING XIA ZHENG
Notary Public - State of New York
NO. 01ZH6314423
Qualified in Queens County
My Commission Expires Nov 10, 2018

LING XIA ZHENG
Notary Public - State of New York
NO 01ZH6314423
Qualified in Queens County
My Commission Expires Nov 10, 2018

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
GARO ALIKSANYAN,
Plaintiff,

**Index No. 17 CV 394**
**(Brodie,J.) (Gold, M.J.)**

- against -

VERIZON,
NY STATE PUBLIC SERVICE COMMISSION,
FEDERAL COMMUNICATIONS COMMISSION,
Defendants.
--------------------------------------X

**AFFIDAVIT OF SERVICE BY MAIL**

Maor Azoulay, being duly sworn, deposes and says :

I am over 18 years of age and not a party to this action. On 3/6/17 I served the Amended Complaint upon VERIZON, NY STATE PUBLIC SERVICE COMMISSION, FEDERAL COMMUNICATIONS COMMISSION,

the Defendants in this action, by mailing a true copy of the attached papers, enclosed and properly sealed in a postpaid envelope, which I deposited in an official depository under the exclusive care and custody of the United States Postal Services within the State of New York addressed to their attorneys:

Montfort, Healy, McGuire & Salley
c/o Christopher Cafaro
on behalf of Verizon
840 Franklin Ave
Garden City, NY 11530

NY State Public Service Commission
c/o Salomon T. Menyeng, Assistant Counsel
3 Empire State Plaza
Albany, NY 12223-1350

US Attorney Eastern District of New York
on behalf of
Federal Communications Commission
Edwin R. Cortes, Esq.
271 Cadman Plaza East
Brooklyn, NY 11201

Signature: Meir Azoulay

Sworn to before my on this 6th day of March, 2017

ALBERT YOO
Notary Public, State of New York
Qualified in Queens County
No. 01YO6174205
My Commission Expires 09-17-2019

NOTARY PUBLIC




Retail

P

US POSTAGE PAID

$6.65

Origin: 11365
Destination: 11201
0 Lb 4.10 Oz
Mar 07, 17
3528860014-08

1006

PRIORITY MAIL ®1-Day

Expected Delivery Day: 03/08/2017 C013

USPS TRACKING NUMBER



9505 5134 1857 7066 0683 65

FROM:



Garo Alexanian
15706 65th Ave.
Flushing, NY 11367

TO:

UNITED STATES COURTHOUSE
EASTERN DISTRICT OF NY
225 CADMAN PLAZA EAST
PRO SE OFFICE
BROOKLYN, NY 11201



PS00001000014

EP14F July 2013
OD: 12.5 x 9.5

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

