UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

GARO ALIKSANYAN,

                        Plaintiff,

              v.

VERIZON, NEW YORK STATE PUBLIC SERVICE
COMMISSION, and FEDERAL
COMMUNICATIONS COMMISSION,

                        Defendants.

-------------------------------------------------------------

**MEMORANDUM & ORDER**
17-CV-394 (MKB)

MARGO K. BRODIE, United States District Judge:

       Plaintiff Garo Aliksanyan, proceeding *pro se*, commenced the above-captioned action on September 20, 2016 against Defendants Verizon New York Inc. ("Verizon"), the New York State Public Service Commission (the "NYPSC"), and the Federal Communications Commission (the "FCC") in Civil Court of the City of New York, County of Queens.  (Notice of Removal, Docket Entry No. 1; State Ct. Compl., annexed to Notice of Removal as Ex. A.)  The FCC removed the action to this Court on January 25, 2017 pursuant to 28 U.S.C. § 1442(a)(1).  (Notice of Removal 1–2.)  Following removal, Plaintiff filed the Amended Complaint on March 8, 2017, alleging that Defendants acted unlawfully by denying him "re-certification" to Verizon's "Lifeline Program landline telephone" service.  (Am. Compl. ¶¶ 1, 6–10, Docket Entry No. 9.)  Plaintiff alleges that Defendants violated his rights under the First, Fifth and Fourteenth Amendments of the United States Constitution, Articles One and Six of the New York State Constitution, federal and state antitrust laws, and numerous other New York state laws.  (*Id.* ¶ 1.)  Plaintiff seeks damages and declaratory relief.  (*Id.* at 3, 12–13.)  Defendants move separately to dismiss the action: (1)

Verizon moved for summary judgment as to all claims on April 28, 2017,[1] (2) the NYPSC moved to dismiss the Amended Complaint on July 26, 2017,[2] and (3) the FCC moved to dismiss the Amended Complaint, or, in the alternative, for summary judgment on July 26, 2017.[3]  The Court consolidates all three motions in this Memorandum and Order.  For the reasons set forth below, the Court dismisses Plaintiff's federal claims against Verizon, determines it lacks subject matter jurisdiction to adjudicate all claims against the NYPSC, and dismisses all claims against the FCC.  The remaining state law claims against Verizon and the claims against the NYPSC are remanded back to New York state court.

## I. Background

Plaintiff, a resident of Flushing, New York, has participated in Verizon's Lifeline Program ("Lifeline") for approximately ten years.[4]  (Am. Compl. ¶¶ 10, 16.)  Lifeline is a government assistance program for low-income Verizon customers.  (*Id.* ¶ 14.)  Eligible customers can receive a landline and broadband internet service for $9.25 per month.  (*Id.*)  Among other things, Defendant NYPSC oversees and regulates New York's telecommunications industry.  (*Id.* ¶ 12.)  Defendant FCC is the federal agency charged with regulating the

---

[1]  (Def. Verizon Mot. for Summ. J. ("Verizon Mot."), Docket Entry No. 19; Def. Verizon Mem. in Supp. of Verizon Mot. ("Verizon Mem."), Docket Entry No. 19-3.)

[2]  (Def. NYPSC Mot. to Dismiss ("NYPSC. Mot."), Docket Entry No. 33; Def. NYPSC Mem. in Supp. of NYPSC Mot. ("NYPSC Mem."), Docket Entry No. 33-1.)

[3]  (Def. FCC Mot. to Dismiss or Summ. J. ("FCC Mot."), Docket Entry No. 28; Def. FCC Mem. in Supp. of FCC Mot. ("FCC Mem."), Docket Entry No. 28-1.)

[4]  For purposes of the NYPSC and the FCC's motions, the Court assumes the truth of the allegations in the Amended Complaint.  For purposes of Verizon's motion for summary judgment, the Court views the evidence in the light most favorable to Plaintiff.  For purposes of this Memorandum and Order, the Court does not consider any allegations or facts beyond that provided by Plaintiff himself.

telecommunications industry and, pursuant to the Telecommunications Act of 1996 ("TCA"), is required to implement Lifeline.  (*Id.* ¶ 13.)  On March 31, 2016, the FCC updated Lifeline and set out minimum service standards (the "2016 FCC Order").  (*Id.* ¶ 14.)  Before this update, qualified customers received a Lifeline landline for $5.68 per month, an amount Plaintiff has paid "for approximately ten years."  (*Id.* ¶¶ 15–16.)  Lifeline requires occasional re-certification for continued qualification.  (*Id.* ¶ 17.)

Verizon denied Plaintiff re-certification five times within a seven-month period.  (*Id.* ¶ 45.)  In January of 2015, Verizon asked Plaintiff to re-certify for the Program.  (*Id.* ¶ 18.)  Plaintiff submitted the requested documentation but did not hear back from Verizon.  (*Id.*)  The following month, Plaintiff's telecommunications bill increased from $5.68 to $39.51.  (*Id.*)  After numerous communications with Verizon, Plaintiff was still unsure why his Lifeline re-certification was denied.  (*Id.* ¶ 19.)  On January 20, 2015, Plaintiff appealed Verizon's decision to the NYPSC, but Plaintiff never heard back from the NYPSC.  (*Id.*)  Plaintiff proceeded to submit two additional Lifeline applications on January 21, 2015 and February 2, 2015.  (*Id.* ¶¶ 20–21.)  By letter dated February 16, 2015, Verizon denied Plaintiff's applications because they were incomplete.  (*Id.* ¶ 22.)  On March 2, 2015, Plaintiff filed a fourth Lifeline application, and in July of 2015, Verizon billed Plaintiff at a Lifeline rate and credited Plaintiff for the months of overbilling.  (*Id.* ¶¶ 24–26.)

In July of 2016, Plaintiff was billed at a higher rate than that provided by Lifeline after requesting a new telephone number from Verizon because of "excessive junk calls."  (*Id.* ¶¶ 27–30.)  Verizon explained to Plaintiff that Lifeline is assigned by telephone number and, as a result of changing his number, he had lost Lifeline status.  (*Id.*)  Accordingly, Verizon asked Plaintiff to re-apply for Lifeline and, on August 2, 2016, Plaintiff submitted a new application for Verizon's

review.  (*Id.* ¶ 32.)  Verizon denied Plaintiff's application.  (*Id.* ¶ 33.)  Upon inquiry, Verizon informed Plaintiff that the application was denied because, as to one of the application categories, he "check[ed] the correct box after checking and crossing out the wrong box."  (*Id.* ¶ 9.)  In September of 2016, Plaintiff filed a complaint with the FCC.  (*Id.* ¶ 34.)  Defendant FCC responded with "two pages of the FCC's website page regarding Lifeline."  (*Id.*)

Verizon disconnected Plaintiff's account after his Lifeline status was revoked.  (*Id.* ¶ 35.) In response, Plaintiff filed a complaint with the NYPSC.  (*Id.* ¶ 38.)  However, the NYPSC never acknowledged receipt of Plaintiff's complaint.  (*Id.* ¶ 39.)

On September 20, 2016, Plaintiff filed suit in state court against Defendants Verizon, the NYPSC and the FCC.  (*Id.* ¶ 40.)  Despite filing the state court action, Plaintiff continued to pursue Lifeline qualification.  Between January 23, 2017 and January 30, 2017, Plaintiff submitted three Lifeline applications.  (*Id.* ¶ 41.)  On February 6, 2017, Verizon denied Plaintiff's applications because: (1) Plaintiff's application billing name did not match the billing name on Verizon's records; (2) Plaintiff failed to prove participation in a qualifying program; and (3) Verizon could not verify Plaintiff's "eligibility in the government's benefits database."  (*Id.* ¶ 41.)  On February 15, 2017, Plaintiff submitted another Lifeline application.  (*Id.* ¶ 42.)  On February 13, 2017,[5] Verizon denied Plaintiff's application on the ground that, to qualify for Lifeline, Plaintiff first had to have an active landline account.  (*Id.*)  On February 24, 2017, Plaintiff's February 15, 2017 application was denied a second time for the same reasons stated in the three January of 2017 applications.  (*Id.* ¶ 43.)

_____

[5]  The Court recognizes the inconsistency between the date that Plaintiff alleges his application was submitted and the date he alleges it was denied.

## II.  Discussion

### a.  Standards of review

#### i.  Rule 12(b)(1)

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À .R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)); *see also Chau v. S.E.C.*, 665 F. App'x 67, 70 (2d Cir. 2016).  The plaintiff has the burden to prove that subject matter jurisdiction exists, and in evaluating whether the plaintiff has met that burden, "'[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'"  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citations omitted), *aff'd*, 561 U.S. 247 (2010).  A court may consider matters outside of the pleadings when determining whether subject matter jurisdiction exists.  *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013); *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010).

#### ii.  Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor."  *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v.*

*N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

### iii.  Rule 56

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018); *see also Cortes v. MTA NYC Transit*, 802 F.3d 226, 230 (2d Cir. 2015); *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013).  The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)).  A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.*

The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### iv. *Pro se* litigants

In reviewing a *pro se* litigant's complaint or other submissions, the court must be mindful to hold the pleadings "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976)); *see also Wiley v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (holding that courts must liberally construe papers submitted by *pro se* litigants "to make the strongest arguments they suggest"); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").[6]

### b. Plaintiff's claims against Verizon

Plaintiff asserts that Verizon, acting under color of federal law, violated his rights under the First and Fifth Amendments.[7]  In the Amended Complaint, Plaintiff identifies sections 1983 and 1985 as the basis for his federal constitutional claims.  (Am. Compl. ¶ 1.)  Plaintiff, however,

---

[6] Because Plaintiff is proceeding *pro se*, the Court considers Plaintiff's factual allegations in his oppositions to the motions, in addition to the allegations in the Amended Complaint.  *See, e.g., Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion."); *Small v. Ortlieb*, No. 10-CV-1616, 2012 WL 3229298, at *1 (E.D.N.Y. Aug. 6, 2012) ("[A]s part of this [c]ourt's duty to construe pro se pleadings liberally, the [c]ourt will take account of all the facts contained in both [plaintiff's] amended complaint and his opposition papers." (citation omitted)).

[7] Plaintiff did not specify whether he is bringing his due process claim under the Fifth or Fourteenth Amendment.  Because Plaintiff claims Verizon is acting under color of federal law, the Court construes his due process claim to be brought under the Fifth Amendment.  *See Mahoney v. Nat'l Org. for Women*, 681 F. Supp. 129, 134 (D. Conn. 1987) ("[T]here is no basis for the plaintiff's [F]ourteenth [A]mendment claims because the acts complained of in the plaintiff's suit arise from federal, not state, law.").

concedes in his opposition submission that his constitutional claims against Verizon are *Bivens* actions. (Pl. Opp'n to Verizon Mot. ("Verizon Opp'n") 4–5, Docket Entry No. 25-1.) Verizon argues that it is not a government actor and therefore is not liable under section 1983. (Verizon Mem. 9.)

To state a claim pursuant to section 1983, a plaintiff must allege that the challenged conduct was "committed by a person acting under color of state law," and that the conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). Section 1983 applies to state actors, not federal officials. However, *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 (1971), permits recovery for some constitutional violations by federal agents, even in the absence of a statute conferring such a right. *Carlson v. Green*, 446 U.S. 14, 18 (1980); *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) ("In *Bivens* . . . we recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights."); *Vasquez v. Klie*, No. 03-CV-3905, 2012 WL 1107306, at *5 (S.D.N.Y. Mar. 30, 2012) ("Under *Bivens* and its progeny, federal courts can hear suits for money damages against federal government officials accused of violating constitutional rights."), *aff'd*, 513 F. App'x 85 (2d Cir. 2013). Under both section 1983 and *Bivens*, a plaintiff's claims generally must be brought against the individuals personally responsible for the alleged deprivation of his constitutional rights, not against the government entities or agencies where those individuals are employed. *See Schweitzer v. Dep't of Veterans Affairs*, 23 F. App'x 57, 59 (2d Cir. 2001) (upholding dismissal of claims against federal agency "because Bivens affords a remedy against only federal officials and precludes actions against federal agencies"); *Rodriguez*

*v. Griffin*, No. 15-CV-610, 2018 WL 1357379, at *5 (N.D.N.Y. Mar. 15, 2018) ("It is well settled in [the Second Circuit] that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (citation omitted)); *Moore v. Samuel S. Stratten Veterans Admin. Hosp.*, No. 16-CV-475, 2016 WL 3647180, at *3 (N.D.N.Y. June 3, 2016) (citing *Malesko*, 534 U.S. at 68, for proposition that the purpose of *Bivens* is to "deter the individual officers, not the agency"), *report and recommendation adopted*, No. 16-CV-0475, 2016 WL 3659909 (N.D.N.Y. June 30, 2016). A plaintiff seeking to recover money damages "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 678.

The Court dismisses Plaintiff's federal constitutional claims because Plaintiff cannot bring a *Bivens* action against a private corporation. In admitting that his claim is brought pursuant to *Bivens*, Plaintiff fails to provide any allegations in his submissions to suggest Verizon is acting under color of state law. (*See* Verizon Opp'n 5–7.) Plaintiff instead consistently argues that Verizon has been following FCC rules, guidelines, and requirements, in implementing the Lifeline, a federal program. (Am. Compl. ¶¶ 14, 17–36.) Based on his admissions and allegations, the Court understands Plaintiff to argue that Verizon is acting under color of federal law. However, Verizon likely cannot be considered to be acting under color of state or federal law for supplying utility services. *See Ludwig's Drug Store, Inc. v. Forest City Enterprises, Inc.*, No. 13-CV-6045, 2016 WL 915102, at *8 (E.D.N.Y. Mar. 4, 2016) (holding allegations of tax benefits and public funding insufficient to a finding that private entity was acting under color of law under both the "close nexus" and "public function" tests); *Shapiro v. Cmty. First Servs., Inc.*, No. 11-CV-4061, 2014 WL 1276479, at *8 (E.D.N.Y. Mar. 27, 2014) (holding that private entities may only be deemed to have acted under color of either federal or state law "if they

perform functions traditionally held *exclusively* in the province of the government" (citing *Island Online, Inc. v. Network Sols., Inc.*, 119 F. Supp. 2d 289, 305 (E.D.N.Y. 2000))); *see also Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352–53 (1974) (holding private corporation was not acting under color of law as utility services are not "traditionally the exclusive prerogative of the State"). Regardless, private corporations cannot be sued under *Bivens*. *See Malesko*, 534 U.S. at 63; *Arar v. Ashcroft*, 585 F.3d 559, 571–72 (2d Cir. 2009); *Barnard v. Verizon Commc'ns, Inc.*, No. 10-CV-1304, 2011 WL 294027, at *9 (E.D. Pa. Jan. 31, 2011) (holding Verizon, as a private corporation, could not be sued under *Bivens*), *aff'd*, 451 F. App'x 80 (3d Cir. 2011). Accordingly, the Court dismisses Plaintiff's *Bivens* constitutional claims against Verizon.[8]

### c. Plaintiff's claims against the NYPSC

Plaintiff asserts claims against the NYPSC under the United States and New York State Constitutions, federal and state antitrust laws, and a number of other causes of action under state law. At the core of all the claims is the assertion that the NYPSC failed to "perform its ministerial duty to 'investigate'" Plaintiff's complaints about Verizon. (Pl. Opp'n to NYPSC Mot. ("NYPSC Opp'n") ¶ 80, Docket Entry No. 34.) The NYPSC argues that the Court lacks subject matter jurisdiction to consider any claims because the State has not waived its Eleventh Amendment immunity to be sued in *federal* court. (NYPSC Mem. 8.) Plaintiff contends that the

---

[8] Plaintiff does not assert any other federal claims against Verizon. Although the Amended Complaint lists claims under the Sherman Act without specifying which Defendants these claims are asserted against, Plaintiff failed to plead any antitrust conduct by Verizon. Nor does Plaintiff mention the Sherman Act or any antitrust conduct in his opposition submission against Verizon, in contrast to his allegations against the FCC and the NYPSC in his opposition submissions as to those parties. (*Compare* Verizon Opp'n 4–8 *with* Pl. Opp'n to FCC Mot. ("FCC Opp'n") ¶¶ 161–70, Docket Entry No. 29, *and* NYPSC Opp'n ¶¶ 138–46.) Moreover, Plaintiff fails to plead an "injury of the type the antitrust laws were intended to prevent." *Balaklaw v. Lovell*, 14 F.3d 793, 797 (2d Cir. 1994) ("The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.").

NYPSC waived any Eleventh Amendment immunity following removal of the action from state court.  (NYPSC Opp'n ¶¶ 1–5.)  The NYPSC asserts that it did not consent to removal and has therefore not waived the immunity afforded by the Eleventh Amendment to arms of the state of New York.  (*See* NYPSC Letter Reply, Docket Entry No. 35; *see also* NYPSC Letter dated February 6, 2017, Docket Entry No. 6 ("The NYPSC does not consent to removal, because, as described below, it continues to assert the State's Eleventh Amendment immunity and general sovereign immunity, which it would waive by its consent.").)

"A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).  "The Eleventh Amendment bars . . . a federal court action against a state or its agencies absent a waiver of immunity or congressional legislation specifically overriding immunity." *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010); *Gollomp v. Spitzer*, No. 06-CV-802, 2007 WL 433361, at *3 (N.D.N.Y. Feb. 5, 2007) ("It is well-established that the Eleventh Amendment bars any suit in federal court against a state or its agencies for either money damages or injunctive relief absent the state's consent or Congress' abrogation of the state's sovereign immunity."), *aff'd*, 568 F.3d 355 (2d Cir. 2009).  States may waive their Eleventh Amendment immunity by consenting to removal.  *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 624 (2002).

Congress has not abrogated New York state's sovereign immunity as to any of the claims asserted by Plaintiff.  Section 1983 and 1985 claims, for example, were "not intended to override a state's sovereign immunity."  *Mamot*, 367 F. App'x at 192 ("It is well-established that New York has not consented to § 1983 suits in federal court, and that § 1983 was not intended to override a state's sovereign immunity." (citations omitted)); *Gollomp v. Spitzer*, 568 F.3d 355,

368 (2d Cir. 2009) (affirming district court decision finding that the Eleventh Amendment precluded section 1985 claims against arm of the state in federal court); *Davis v. New York*, 106 F. App'x 82, 83 (2d Cir. 2004) (same); *Fincher v. State of Fla. Dep't of Labor & Emp't Sec. Unemployment Appeals Comm'n*, 798 F.2d 1371, 1372 (11th Cir. 1986) ("We find no express congressional abrogation of the state's Eleventh Amendment immunity with respect to 42 U.S.C. § 1985 actions."). Likewise, the Sherman Act cannot be used to override a state's Eleventh Amendment immunity. *See Jackson v. State of Connecticut Dep't of Pub. Health*, No. 15-CV-750, 2016 WL 3460304, at *13 (D. Conn. June 20, 2016) ("With respect to the Sherman Act, the antitrust statutes do not contain a clear intent to subject states to federal court jurisdiction and liability." (citing 15 U.S.C.A. § 15)), *appeal dismissed sub nom. Jackson v. Connecticut Dep't of Pub. Health*, No. 16-CV-2282, 2017 WL 6759304 (2d Cir. Oct. 17, 2017); *Daniel v. Am. Bd. of Emergency Med.*, 988 F. Supp. 127, 153 (W.D.N.Y. 1997) ("[I]f Congress was concerned that no remedy would be available for antitrust violations, it could abrogate the immunity provided by the Eleventh Amendment." (citations omitted)). The Court is also precluded from considering Plaintiff's state law claims because the "Eleventh Amendment bars the adjudication of pendent state law claims against nonconsenting state defendants in federal court." *Raygor v. Regents of Univ. of Minnesota*, 534 U.S. 533, 540–41 (2002).

The NYPSC also did not consent to federal jurisdiction by removal.[9] Rather, the FCC unilaterally removed the action pursuant to 28 U.S.C. § 1442(a)(1). Title 28, United States Code,

---

[9] It is well-established that the NYPSC is an arm of the state of New York. *See Cty. of Suffolk v. Alcorn*, 266 F.3d 131, 134 (2d Cir. 2001) (describing the NYPSC as "the [state] agency with authority to approve applications for rate increases"); *Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.*, 84 F.3d 91, 94 (2d Cir. 1996) ("State agencies such as the [NY]PSC are empowered to regulate the facilities and approve the contracts covered by PURPA.").

section 1442(a)(1), unlike section 1441, does not require consent of all the defendants to effectuate a removal from state court. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 488 F.3d 112, 134 (2d Cir. 2007) (noting that § 1442(a)(1) does not require "the consent of all defendants"). Because removal was involuntary, the NYPSC has not waived its Eleventh Amendment immunity to be sued in federal court. *See Kozaczek v. New York Higher Educ. Servs. Corp.*, 503 F. App'x 60, 62 (2d Cir. 2012) (holding action was barred by Eleventh Amendment immunity following removal because defendant did not consent to removal); *see also Booker v. Arizona*, No. 09-CV-902, 2010 WL 1814520, at *2 (D. Ariz. May 5, 2010) (holding eleventh amendment immunity not to have been waived where state did not consent to removal pursuant to 28 U.S.C. § 1442). "Likewise, [the NYPSC] did not waive immunity by filing motions to dismiss." *Kozaczek*, 503 F. App'x at 62 (holding state agency did not waive its Eleventh Amendment immunity after filing a motion to dismiss following involuntary removal to federal court). Accordingly, the Court dismisses the claims against the NYPSC for lack of subject matter jurisdiction.[10]

### d. Plaintiff's claims against the FCC

Plaintiff asserts claims against the FCC under the United States and New York State Constitutions, federal and state antitrust laws, and a number of other state law causes of action. The FCC moves to dismiss based on sovereign immunity, the Federal Tort Claims Act ("FTCA"), and the Contract Disputes Act ("CDA"). (*See generally* FCC Mem.) Plaintiff contends that various exceptions apply, most notably, the Tucker Act. (Pl. Opp'n to FCC Mot. ("FCC Opp'n") ¶ 1, Docket Entry No. 29.)

---

[10] The Court does not address the NYPSC's other arguments for dismissal, including *whether* it may be sued under the Eleventh Amendment.

### i.  FTCA claims

The United States is generally immune from suit. *United States v. Bormes*, 568 U.S. 6, 9–10 (2012) ("Sovereign immunity shields the United States from suit absent a consent to be sued that is 'unequivocally expressed.'" (quoting *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33–34 (1992))).  Pursuant to the FTCA, "Congress waived the United States' sovereign immunity for claims arising out of torts committed by federal employees while acting within the scope of their employment." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217–18 (2008); *Haskin v. United States*, 569 F. App'x 12, 15 (2d Cir. 2014); *Vidro v. United States*, 720 F.3d 148, 150 (2d Cir. 2013); *see generally Levin v. United States*, 568 U.S. 503, 506 (2013) ("The [FTCA] gives federal district courts exclusive jurisdiction over claims against the United States for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission' of federal employees acting within the scope of their employment." (quoting 28 U.S.C § 1346(b)(1))); *Molchatsky v. United States*, 713 F.3d 159, 161–62 (2d Cir. 2013) (quoting 28 U.S.C. § 1346(b)(1)).  "The United States' waiver of immunity under the FTCA is to be strictly construed in favor of the government." *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012). Under the FTCA, the suit must be brought against the United States and not a federal agency. *See Mignogna v. Sair Aviation, Inc.*, 937 F.2d 37, 40 (2d Cir. 1991).

Plaintiff's tort claims are dismissed because they are asserted against the FCC, a federal agency, and not the United States.[11]  Therefore, the following tort claims are dismissed: (1) tortious interference with contractual rights; (2) negligence; (3) negligent failure to properly supervise, discipline and train employees; (4) unfair competition and misappropriation; (5)

---

[11]  It is well-established that the FCC is a federal agency. *See Up State Tower Co., LLC v. Town of Kiantone, New York*, --- F. App'x ---, ---, 2017 WL 6003349, at *1 (2d Cir. Dec. 5, 2017) ("The FCC — the federal agency charged with enforcing the TCA . . . .").

fraudulent and negligent misappropriation; (6) intentional and negligent infliction of emotional distress; and (7) unjust enrichment.

Even if the Court were to construe the claims as being asserted against the United States in view of Plaintiff's *pro se* status, they would nevertheless fail because Plaintiff has not exhausted his administrative remedies.  *Accolla v. U.S. Gov't*, 381 F. App'x 71, 73 (2d Cir. 2010) ("The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court.  This requirement is jurisdictional and cannot be waived." (quoting *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005))). Plaintiff admits in his opposition submission to the FCC that he has not exhausted his administrative remedies.  (FCC Opp'n ¶ 23 ("FCC is correct that [P]laintiff did not first file a claim as required under the FTCA.").)  His tort claims are therefore barred.

### ii.  Tucker Act claims

Section 1346(a)(2), also known as the Little Tucker Act, is not a freestanding source of jurisdiction for any and all claims alleged against the United States, but rather is "simply [a] jurisdictional provision[ ] that operate[s] to waive sovereign immunity for claims premised on other sources of law."  *Bormes*, 566 U.S. at 10.  This provision, in relevant part, waives sovereign immunity in suits against the United States for monetary damages less than $10,000 that are based on federal law, contract, or non-tort claims.  *See* 28 U.S.C. § 1346(a)(2) ("[D]istrict courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of [a]ny other civil action or claim against the United States, not exceeding $10,000 in amount founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."); *Adeleke v.*

*United States*, 355 F.3d 144, 152 (2d Cir. 2004) ("[T]he Little Tucker Act confers concurrent jurisdiction upon district courts when the amount of the damage claim is $10,000 or less."). The Tucker Act "has long been construed as authorizing only actions for money judgments and not suits for equitable relief against the United States." *Polanco v. U.S. Drug Enf't Admin.*, 158 F.3d 647, 652 (2d Cir. 1998) (quoting *Richardson v. Morris*, 409 U.S. 464, 465 (1973)); *see New York v. U.S. Dep't of Health & Human Servs.*, No. 07-CV-8621, 2008 WL 5211000, at *16 n.7 (S.D.N.Y. Dec. 15, 2008) (finding that Section 1346(a)(2) did not provide jurisdiction to hear Plaintiff's claim for declaratory and injunctive relief (citing *Richardson*, 409 U.S. at 465)).

Plaintiff argues that the Tucker Act applies because (1) he is a third-party beneficiary of the contract between the FCC and Universal Service Administrator Co. ("USAC"),[12] and (2) the portions of the TCA and the 2016 FCC Order regulating the Lifeline Program mandates monetary compensation.[13]  (FCC Opp'n ¶¶ 8–10.)

### 1.  Plaintiff is not a third-party beneficiary of the FCC's contract with USAC

"[A]bsent a contractual relationship there can be no contractual remedy."[14]  *Hillside*

---

[12]  The USAC is the organization that "the FCC has contracted with to make the eligibility determinations for Lifeline purchase."  (FCC Opp'n ¶ 10.)

[13]  Plaintiff also asserts that he has a contract with Verizon to purchase and make use of the Lifeline Program, and an undefined "implied contract" with the FCC.  (FCC Opp'n ¶¶ 9, 11.) However, Plaintiff fails to explain how the FCC may be liable for his contract with Verizon, assuming its existence.  In addition, Plaintiff's "implied contract" theory appears to be based on his argument that the Telecommunications Act and the 2016 FCC Order mandate monetary compensation.  (FCC Opp'n 12–17.)

[14]  As discussed *infra*, Plaintiff is not a party or a third-party beneficiary to any contract with the FCC.  Therefore, the Court does not address the applicability of the CDA.  *See also G.E. Boggs & Assocs., Inc. v. Roskens*, 969 F.2d 1023, 1026 (Fed. Cir. 1992) ("Not all government contracts . . . fall within the Contract Disputes Act.  The scope of the Act is limited, *inter alia,* to express or implied contracts by an executive agency for the procurement of services and property and for the disposal of personal property." (citations omitted)).

*Metro Assocs., LLC v. JPMorgan Chase Bank, Nat. Ass'n*, 747 F.3d 44, 49 (2d Cir. 2014)

(quoting *Suffolk Cty. v. Long Island Lighting Co.*, 728 F.2d 52, 63 (2d Cir. 1984)).  "Such a

relationship exists if the plaintiff is in privity of contract with the defendant or is a third-party

beneficiary of the contract."  *Id.*; *Roedler v. Dep't of Energy*, 255 F.3d 1347, 1351 (Fed. Cir.

2001) ("Third party beneficiaries of a contract to which the United States is a party may assert a

claim against the United States, in accordance with the law governing third party claims.");

*Erickson Air Crane Co. of Washington v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984) ("The

government consents to be sued only by those with whom it has privity of contract.").  "Proving

third-party beneficiary status requires that the contract terms clearly evidence[] an intent to

permit enforcement by the third party' in question."  *Hillside Metro*, 747 F.3d at 49 (alteration in

original) (citations and internal quotation marks omitted).  "In the case of government contracts,

'individual members of the public are treated as incidental beneficiaries unless a different

intention is manifested.'"  *Id.* (quoting Restatement (Second) of Contracts § 313 cmt. a (1981));

*Schuerman v. United States*, 30 Fed. Cl. 420, 428 (1994) ("In cases of contracts intended to

benefit the general public, a stranger to such contract must show that the contract 'was intended

for his direct benefit.'" (quoting *German All. Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220,

230 (1912))).

Plaintiff fails to allege, and cannot allege, any facts indicating that he is a third-party

beneficiary of any contract between the FCC and the USAC.  Plaintiff argues that the contract

between the FCC and USAC is ultimately designed to benefit him and others who qualify for the

Lifeline Program.  Plaintiff's theory "unduly extend[s] contract liability," well-beyond that "in

contemplation of the parties [to the contract]" as well as the law.  *German*, 226 U.S. at 231.

Because, as in this case, "Government contracts often benefit the public," Plaintiff must

17

demonstrate that the contract between the USAC and the FCC included "an express provision entitling a third person not a party to a contract to enforce the provisions of the contract on his own behalf." *H.F. Allen Orchards v. United States*, 4 Cl. Ct. 601, 613, *aff'd*, 749 F.2d 1571 (Fed. Cir. 1984). Plaintiff fails to allege any such express provision and instead relies solely on benefits conferred to the general public.[15] *See City of Jamestown v. Pennsylvania Gas Co.*, 1 F.2d 871, 878 (2d Cir. 1924) (explaining "individual inhabitants" of city "merely have the benefit" of the contract between the municipality and the public service corporation).

### 2. The TCA and the 2016 FCC Order do not mandate compensation to Plaintiff

"A statute creates a right capable of grounding a claim within the waiver of sovereign immunity if, but only if, it 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) (citation omitted). "This 'fair interpretation' rule demands a showing demonstrably lower than the standard for the initial waiver of sovereign immunity." *Id.* at 472. "Because the Tucker Act supplies a waiver of immunity for claims of this nature, the separate statutes and regulations need not provide a second waiver of sovereign immunity, nor need they be construed in the manner appropriate to waivers of sovereign immunity." *Id.* at 472–73 (citation omitted). "It is enough, then, that a statute creating a Tucker Act right be reasonably amenable to the reading that it mandates a right of recovery in damages." *Id.* at 473. "While the premise to a Tucker Act claim will not be 'lightly inferred,' a fair inference will do." *Id.* (citation

---

[15] Plaintiff appears to also argue that his status as a taxpayer entitles him to the benefits of Lifeline, both as a third-party beneficiary and through the formation of a contract with the FCC. (FCC Opp'n ¶¶ 13–15.) However, Plaintiff's status as a taxpayer alone does not confer any contractual rights to services provided to the general public. *See West v. United States*, 243 F.3d 565, 2000 WL 1644608, at *1 (Fed. Cir. 2000) ("[N]either the Internal Revenue Code nor the Social Security system bestow contractual rights on taxpayers.").

omitted).  In short, a plaintiff must be able to point to a separate statute that confers a right to

compensation in order to take advantage of the waiver of sovereign immunity conferred by the

Tucker Act.

The TCA and the 2016 FCC Order do not mandate compensation to Plaintiff.  Under the

TCA, *telecommunications carriers* are eligible for reimbursement for participation in Lifeline.

47 C.F.R. § 54.407 ("[R]eimbursement shall be provided to an eligible telecommunications

carrier based on the number of actual qualifying low-income customers it serves directly as of

the first day of the month found in the National Verifier." (emphasis added)); *see also Britell v.*

*United States*, 372 F.3d 1370, 1378 (Fed. Cir. 2004) ("[T]his type of mandatory language, e.g.,

'will pay' or 'shall pay,' creates the necessary 'money-mandate' for Tucker Act purposes.").

There is no similar mandate for direct reimbursement to eligible consumers in the TCA, nor is

there one in the 2016 FCC Order.  While eligible consumers ultimately receive cheaper services

through the Lifeline program, Plaintiff is not "within the class of plaintiffs entitled to recover

under the statute."  *Greenlee Cty., Ariz. v. United States*, 487 F.3d 871, 876 (Fed. Cir. 2007); *see*

*id.* at 876 n.2 ("The statute must, of course, be money-mandating as to the particular class of

plaintiffs.").

In the Second Circuit, the indirect benefits conferred to Plaintiff through Lifeline are also

likely to be considered *equitable relief*, rather than damages as required by the Tucker Act.  *See*

*Bormes*, 568 U.S. at 10 ("The Little Tucker Act is one statute that unequivocally provides the

Federal Government's consent to suit for certain *money-damages* claims." (emphasis added));

*see also Khanom v. Kerry*, 37 F. Supp. 3d 567, 576 (E.D.N.Y. 2014) (holding the plaintiff's claim

for declaratory and injunctive relief was barred because the Little Tucker Act only allows for

money judgments).  The Second Circuit has cited favorably to *Zellous v. Broadhead Associates*,

19

906 F.2d 94, 99 (3d Cir. 1990), a Third Circuit decision holding that claims by indirect

beneficiaries of similar reimbursement mandates to be seeking relief that is equitable in nature

rather than damages.[16]  *See Linea Area Nacional de Chile S.A. v. Meissner*, 65 F.3d 1034, 1044

(2d Cir. 1995); *see also Aetna Cas. & Sur. Co. v. United States*, 71 F.3d 475, 479 (2d Cir. 1995)

("In [*Linea Area Nacional*], we held that an injunction to enforce a statutory duty to pay money

did not constitute monetary relief under the [Administrative Procedure Act ("APA")], even where

the statute did not specify that the money was owed directly to the plaintiff."); Gregory C.

Sisk, *The Tapestry Unravels: Statutory Waivers of Sovereign Immunity and Money Claims*

*Against the United States*, 71 Geo. Wash. L. Rev. 602, 671–72 (2003) (citing *Linea Area*

*Nacional* for proposition that "[t]he Third Circuit . . . is not alone in treating claims by people

intervening to redirect federal grant funds from the designated recipients to themselves as falling

within the ambit of a mere claim for specific relief under the APA").

    The Court dismisses the FCC from the action in its entirety because it cannot be sued

either in federal or state court for the reasons discussed above.[17]  *Robinson v. Overseas Military*

---

    [16]  Plaintiff does not have a claim under the Administrative Procedures Act ("APA") even
if the Court were to construe his asserted damages claim to be one for equitable relief because he
has not exhausted his remedies with the FCC.  As Plaintiff admits, he failed to file a complaint
with the FCC until after the commencement of this action, and the FCC has not yet reached a
final agency action.  (FCC Opp'n ¶ 23 ("FCC is correct that [P]laintiff did not first file a claim as
required under the FTCA."); *see also In re S.E.C. ex rel. Glotzer*, 374 F.3d 184, 189 (2d Cir.
2004) ("APA § 704 provides that judicial review is available only for 'final agency action,' . . .
This section 'explicitly requires exhaustion of all intra-agency appeals mandated either by statute
or by agency rule.'").

    [17]  The Court also denies Plaintiff's request to add John Does as FCC and NYPSC
employees for his tort claims, (*see* FCC Opp'n ¶ 128), and injunctive relief against the agencies,
(*id.* ¶¶ 40–44).  As to the NYPSC, Plaintiff may request leave to amend with the state court
following remand.  As to the FCC, Plaintiff's tort claims for damages are barred by sovereign
immunity.  Likewise, Plaintiff cannot pursue any injunctive relief against the FCC because, as
discussed above, all his claims against the agency itself are barred by sovereign immunity.  (*See*

*Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived."); *Griggs v. LaHood*, 770 F. Supp. 2d 548, 551 (E.D.N.Y. 2011) ("As a general matter, the federal government, and by extension, federal employees acting in their official capacities, are entitled to absolute sovereign immunity from suit.").

### iii.  United States Constitutional claims

As discussed in the analysis of Plaintiff's claims against Verizon, Plaintiff's federal constitutional claims are *Bivens* actions.  Because the FCC is a federal agency, Plaintiff's United States Constitutional claims are dismissed.  *See Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 484–86 (1994) (holding that a *Bivens* action is not available directly against agencies of the federal government); *see also Harrison v. Potter*, 323 F. Supp. 2d 593, 604 (S.D.N.Y. 2004) (dismissing 1983 and 1985 claims "[b]ecause the United States has not waived its sovereign immunity for constitutional tort claims under the Civil Rights Act").

### iv.  Sherman Antitrust Act claims

The Court also dismisses Plaintiff's Sherman Act claims against the FCC, because "[t]he United States, its agencies and officials, remain outside the reach of the Sherman Act." *McCrudden v. Nat'l Futures Ass'n*, No. 13-CV-6930, 2014 WL 4412470, at *3 (S.D.N.Y. Sept. 8, 2014) (quoting *Name.Space, Inc. v. Network Solutions, Inc.*, 202 F.3d 573, 580 (2d Cir. 2000)).

---

FCC Opp'n ¶ 41 ("Here [P]laintiff has <u>not</u> sued individuals or official government actors. Plaintiff has sued the government agency itself."); *see also S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240 (2d Cir. 2001) ("[U]nder Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law.").

### v.   State law claims

Similarly, the Court dismisses Plaintiff's New York state law claims against the FCC because "[t]he sovereign immunity of the United States may only be waived by federal statute." *Purcell for Estate of Tyree v. Bureau of Alcohol, Tobacco, & Firearms*, No. 17-CV-2742, 2017 WL 3700894, at *3 (E.D.N.Y. Aug. 25, 2017) (quoting *Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of Hous. & Urban Dev.*, 175 F.3d 132, 139 (2d Cir. 1999)).

### e.   Supplemental jurisdiction

As discussed *supra*, the Court dismisses the federal claims against Verizon, all claims against the NYPSC and the FCC.  Under these circumstances, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims against Verizon.  *See* 28 U.S.C. § 1367(c)(3) (providing that district courts may decline to exercise supplemental jurisdiction where it has dismissed all claims over which it has original jurisdiction).

### f.   Remand to State court

Because the claims against the NYPSC were dismissed on the basis that it cannot be sued in federal court absent waiver of sovereign immunity, the state claims against Verizon and all claims against the NYPSC are remanded back to New York state court.  *See* 28 U.S.C.A. § 1447 ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *see also Chapman v. Crane Co.*, 694 F. App'x 825, 827 (2d Cir. 2017) (affirming remand after the federal claims were dismissed following removal pursuant to 28 U.S.C. § 1442(a)(1)); *Wolpoff v. Cuomo*, 792 F. Supp. 964, 968 (S.D.N.Y. 1992) (remanding case back to New York state court due to lack of subject matter jurisdiction pursuant to the Eleventh Amendment).

### III. Conclusion

For the foregoing reasons, the Court grants the FCC's motion in its entirety, and the NYPSC's and Verizon's motions in part. The Court dismisses all claims against the FCC and the NYPSC, and the federal claims against Verizon. The FCC is terminated from the action because the claims against it are dismissed on the basis of sovereign immunity, and failure to exhaust administrative remedies. The Court remands the case back to state court as to Verizon and its remaining state law claims, and the NYPSC and all its claims which were not addressed on the merits.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: March 31, 2018
       Brooklyn, New York